1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

10

ANTHONY CHARLES WALKER,

11              *Petitioner*,                                    3:06-cv-00425-HDM-RAM

12    vs.

13    WILLIAM DONAT, *et al.*,                           ORDER

14              *Respondents*.

15

16          This habeas matter under 28 U.S.C. § 2254 comes before the Court for a decision on

17    the merits on the remaining claims.  Petitioner Anthony Charles Walker seeks to set aside his

18    July 27, 2004, Nevada state conviction, pursuant to a guilty plea, of two counts of robbery with

19    the use of a deadly weapon and one count of robbery.  In the claims that remain before the

20    Court, petitioner challenges his conviction based primarily upon alleged ineffective assistance

21    of counsel.

22                                              ***Governing Law***

23          The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly

24    deferential standard for evaluating state-court rulings."  *Lindh v. Murphy*, 117 S.Ct. 2059,

25    2066 n.7(1997).  Under this deferential standard of review, a federal court may not grant

26    habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g.,*

27    *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).  Instead, under 28 U.S.C. § 2254(d),

28    the federal court may grant habeas relief only if the decision: (1) was either contrary to or

1  involved an unreasonable application of clearly established law as determined by the United

2  States Supreme Court; or (2) was based on an unreasonable determination of the facts in

3  light of the evidence presented at the state court proceeding.  *E.g.*, *Mitchell v. Esparza*, 540

4  U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

5          A state court decision is "contrary to" law clearly established by the Supreme Court only

6  if it applies a rule that contradicts the governing law set forth in Supreme Court case law or

7  if the decision confronts a set of facts that are materially indistinguishable from a Supreme

8  Court decision and nevertheless arrives at a different result.  *E.g., Mitchell,* 540 U.S. at 15-16,

9  124 S.Ct. at 10.  A state court decision is not contrary to established federal law merely

10  because it does not cite the Supreme Court's opinions.  *Id.*  Indeed, the Supreme Court has

11  held that a state court need not even be aware of its precedents, so long as neither the

12  reasoning nor the result of its decision contradicts them.  *Id.*  Moreover, "[a] federal court may

13  not overrule a state court for simply holding a view different from its own, when the precedent

14  from [the Supreme] Court is, at best, ambiguous."  *Mitchell*, 540 U.S. at 16, 124 S.Ct. at 11.

15  For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme

16  Court precedent is not contrary to clearly established federal law.

17          A state court decision constitutes an "unreasonable application" of clearly established

18  federal law only if it is demonstrated that the court's application of Supreme Court precedent

19  to the facts of the case was not only incorrect but "objectively unreasonable."  *E.g., Mitchell*,

20  540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

21          To the extent that the state court's factual findings are challenged intrinsically based

22  upon evidence in the state court record, the "unreasonable determination of fact" clause of

23  Section 2254(d)(2) controls on federal habeas review.  *E.g., Lambert v. Blodgett*, 393 F.3d

24  943, 972 (9th Cir. 2004).  This clause requires that the federal courts "must be particularly

25  deferential" to state court factual determinations.  *Id.*  The governing standard is not satisfied

26  by a showing merely that the state court finding was "clearly erroneous."  393 F.3d at 973.

27  Rather, the AEDPA requires substantially more deference:

28

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof. 393 F.3d at 972.

On a claim of ineffective assistance of counsel, the petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's defective performance caused actual prejudice. On the performance prong, the issue is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from his perspective at the time. The reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *E.g., Bailey v. Newland*, 263 F.3d 1022, 1028-29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason – because the omitted issue has little or no likelihood of success on appeal. *Id.*

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 333 F.3d at 991.

-3-

1

***Ground 1:   Effective Assistance – Jury Trial Right on Weapon Enhancement***

2          In Ground 1, petitioner alleges in principal part that he was denied effective assistance

3   of counsel when  counsel allegedly failed to advise him that he had a right specifically to have

4   a jury decide the issue of whether the weapon enhancement should be applied on the

5   charges for robbery with the use of a deadly weapon.

6          Walker pled guilty to three different robberies of three different individuals, including

7   the charges in Counts 4 and 12 of the amended information of robbery with the use of a

8   deadly weapon.  In Count 4, he was charged with having robbed Lenny D'Amico on July 26,

9   2003, using a firearm and/or BB gun.  In Count 12, he was charged with having robbed

10  Genene Tekle on August 16, 2003, using a firearm and/or BB gun.[1]  The preliminary hearing

11  testimony reflected that both D'Amico and Tekle were cab drivers in the Las Vegas area.[2]

12         At the preliminary hearing, D'Amico testified, *inter alia*, as follows.  He was giving

13  Walker and his wife a taxi ride on July 26, 2003.   When they arrived at the requested

14  destination, Walker's wife jumped out of the cab and ran off.  When D'Amico inquired about

15  payment of the fare, Walker pulled out a gun, placed the gun against D'Amico's right rib cage,

16  and demanded D'Amico's money.  Although D'Amico initially testified on direct that he did not

17  see the gun, he testified on cross-examination that he lifted his arm and looked at the gun

18  before he surrendered his money.  He believed that the gun was a black semiautomatic.  After

19  D'Amico turned over all of his money and Walker was getting ready to leave, Walker told

20  D'Amico that if he moved in the next five minutes "I'm blasting you."[3]

21         / / / /

22

23
_____

[1]#18-10, Ex. I; #18-11, Ex. J.

24

25  [2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of any
    state court evidence.  The Court t summarizes the evidence solely as background to the issues presented, in
    this instance to reflect the evidence available to the State at the time of petitioner's plea.  No statement of fact

26  in describing testimony or evidence constitutes a finding of fact or credibility determination by this Court.
    Further, the Court does not summarize all of the state court evidence.  The Court instead summarizes the

27  evidence most pertinent to petitioner's particular claims.

28  [3]#18, Ex. B, at 58-70 & 73-75.

1    Tekle testified, *inter alia*, as follows.  He picked up Walker's wife at a Budget Suites
2    at Tropicana and Wynn and took her to an apartment complex to pick up Walker, purportedly
3    to then take the couple to the Hard Rock Casino.  When they arrived at the apartment
4    complex, Walker was standing outside.  Walker got into the cab, and Walker's wife then
5    exited the cab and walked into the apartment complex.  While Tekle and Walker ostensibly
6    were waiting for Mrs. Walker's return, Walker pulled out a gun and told Tekle to "give me what
7    you got."  Tekle saw a black gun that he believed was a square semiautomatic.  Similar to the
8    D'Amico robbery, Walker placed the gun against Tekle's right rib cage.[4]

9    The written guilty plea agreement included, *inter alia*, express statements and
10   acknowledgments by Walker: (1) that he was pleading guilty to, *inter alia*, the two counts of
11   robbery with the use of a deadly weapon "as more fully alleged in the charging document
12   attached" to the plea agreement; (2) that he understood by pleading guilty he admitted the
13   facts "which support all the elements of the offense(s) to which I now plead as set forth in" the
14   attached charging document; (3) that he understood as a consequence of pleading guilty to
15   Counts 4 and 12 he must be sentenced, on each count, to a minimum of not less than 2 years
16   and a maximum of not more than 15 years "plus an equal and consecutive minimum term of
17   not less than TWO (2)  years and a maximum term of not more than FIFTEEN (15) years for
18   use of a deadly weapon;" (4) that he had not been promised or guaranteed any particular
19   sentence by anyone; (5) that he knew that his sentence was to be determined by the court
20   within the limits prescribed by statute; (6) that, by entering a plea of guilty, he understood that
21   he was waiving and forever giving up a number of rights and privileges including, *inter alia*,
22   "[t]he constitutional right to a . . . public trial by an impartial jury" at which "the State would
23   bear the burden of proving beyond a reasonable doubt each element of the offense charged;"
24   (7) that he had "discussed the elements of all of the original charge(s) against me with my
25   attorney and I understand the nature of the charge(s) against me;" (8) that he understood
26   "that the State would have to prove each element of the charge(s) against me at trial;" (9) that

27

28   [4]#18, Ex. B, at 41-57.

he had discussed with his attorney "any possible defenses, defense strategies and circumstances which might be in my favor;" (10) that "[a]ll of the foregoing elements, consequences, rights, and waiver of rights have been thoroughly explained to me by my attorney;" and (11) that "[m]y attorney has answered all my questions regarding this guilty plea agreement and its consequences to my satisfaction and I am satisfied with the services provided by my attorney."[5]

Both Walker and his wife entered guilty pleas in the same proceeding.  Walker was present during his wife's plea colloquy immediately prior to his own.  The state district court judge went through the full colloquy with each defendant.[6]

At the time of his plea, Walker was 38 years old; he had a college education; and he could read, write and understand the English language.  During his plea colloquy, Walker acknowledged, *inter alia*: (1) that he had been given a copy of the amended information and that he was familiar with the charges against him; (2) that he was pleading guilty to, *inter alia*, the two counts of robbery with the use of a deadly weapon; (3) that he was pleading guilty freely and voluntarily and that no one was forcing him to plead guilty; (4) that he understood as a consequence of pleading guilty to Counts 4 and 12 he would be sentenced, on each count, to a minimum of not less than 2 years and a maximum of not more than 15 years plus an equal and consecutive minimum term of not less than 2  years and not more than 15 years; (5) that he knew that sentencing was completely up to the court; (6) that he understood that he was giving up the constitutional rights listed in the guilty plea agreement; (7) that he had discussed the case with his attorney prior to signing the guilty plea memorandum; and (8) that his attorney had answered all of his questions.[7]

Walker further made the following express admissions of fact, in which he specifically admitted that he committed the offenses as charged in Counts 4 and 12:

---

[5]#18-11, Ex. J.

[6]#18-12, Ex. K.

[7]#18-12, Ex. K, at 8-12.

THE COURT: Are you pleading guilty because on or between July 26, 2003, and August 16, 2003, in Clark County, State of Nevada, in count 4, robbery with use of a deadly weapon, did you on or about July 26, 2003, willfully, unlawfully, and feloniously take personal property from the person of Lenny D'Amico, it was money, by means of force or fear of injury to without the consent and against the will of Lenny D'Amico using a deadly weapon, a firearm and/or a BB gun during the commission of said crime and you acted in concert with Mrs. Walker to commit the offences and you aided and abetted each other or, directly or indirectly counseling and encouraging each other to commit the crime of robbery with use of a deadly weapon?

DEFENDANT MR. WALKER: Yes Your Honor.

THE COURT: All right and then in count 12, another robbery with use of a deadly weapon, did you also on or about the 16th day of August, 2003, in Clark County, State of Nevada, willfully, unlawfully, and feloniously take personal property, money, lawful money of the United States from, Genene Tekle in his presence, or by means of force or fear of injury to, without the consent or against the will of Genene Tekle and defendant used a deadly weapon to wit: a firearm and/or a BB gun during the commission of the crime and you acted in concert with Ms. Walker; you aided and abetted each other or directly or indirectly counseling and/or encouraged each other to commit the crime of robbery with use of a deadly weapon?

DEFENDANT MR. WALKER: Yes, Your Honor.

#18-12, Ex. K, at 11.

The state district court thereupon found that Walker understood the nature and consequences of his plea and that his plea was voluntarily and freely given.[8]

On the state post-conviction review, petitioner presented a claim corresponding to federal Ground 1 that defense counsel allegedly was ineffective for failing to advise him specifically that he had a right to have a jury decide the weapon enhancement issue. The Supreme Court of Nevada rejected petitioner's claim on the following grounds:

.  .  .  [A]ppellant claimed that his trial counsel was ineffective for failing to object to the deadly weapon enhancement. Appellant claimed that his trial counsel failed to inform him that his sentence would be enhanced. Appellant

---

[8]#18-12, Ex. K, at 11.

claimed that his trial counsel further failed to inform him that he had a right to have a jury decide the issue of the deadly weapon and that he waived that right by entry of his guilty plea.

Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant was informed during the plea canvass and in the written plea agreement that two of the robbery charges included a deadly weapon enhancement. Appellant was specifically informed that for each of the robbery with use of a deadly weapon counts that the deadly weapon enhancement required imposition of a term equal and consecutive to the term for the primary offense. The written plea agreement further informed appellant that he waived his right to a jury trial by entry of his guilty plea, and appellant acknowledged during the plea canvass that he understood the waiver of his constitutional rights as set forth in the written plea agreement. Attached to the guilty plea agreement was an amended information setting forth the charges, which included two counts of robbery with the use of a deadly weapon. Appellant acknowledged his receipt of the amended information, and appellant affirmatively acknowledged the facts supporting the deadly weapon enhancements for two counts of robbery with the use of a deadly weapon. Appellant further received a benefit by entry of his guilty plea in that he avoided additional charges that would have exposed him to a greater period of incarceration. [FN4] Therefore, we conclude that the district court did not err in denying this claim.

[FN4] The State agreed to the dismissal of the following charges in exchange for the guilty plea: 3 counts of conspiracy to commit kidnapping, three counts of conspiracy to commit robbery and three counts of first degree kidnapping.

#18-18, Ex. W, Order of Affirmance, at 2-3.

The Nevada Supreme Court's rejection of this claim was neither contrary to nor an unreasonable application of *Strickland* or other relevant clearly established law as determined by the United States Supreme Court.

In *Blackledge v. Allison*, 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), the United States Supreme Court held:

. . . . [T]he representations of the defendant, his lawyer, and the prosecutor at . . . a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

431 U.S. at 73-74, 97 S.Ct. at 1629.  The *Blackledge* Court observed that "a petitioner challenging a plea given pursuant to procedures [similar to those employed by the state court in this case] will necessarily be asserting that not only his own transcribed responses, but those given by two lawyers, were untruthful."  431 U.S. at 80 n.19, 97 S.Ct. at 1632 n. 19. Under *Blackledge*, a collateral attack that directly contradicts the responses at the plea proceedings "will entitle a petitioner to an evidentiary hearing only in the most extraordinary circumstances."  *Id*.

In the present case, Walker expressly acknowledged in the written plea agreement together with the plea colloquy, *inter alia,* that he understood the elements of the charges to which he was entering a guilty plea, that he understood that the State would have to prove each element beyond a reasonable doubt before a jury if he went to trial, that he instead was forever waiving his right to have a jury decide the issues in the case, that he had discussed the case with his attorney, that his attorney had answered all of his questions, and that he was satisfied with his attorney's representation.  Petitioner's allegation now that he instead was not properly advised as to his right to have a jury decide one of the subsidiary issues in his case, the weapon enhancement issue, flies directly in the face of the declarations that he made at the time of his plea.

The plea agreement and plea colloquy clearly reflect that petitioner was advised of his jury trial right and that he waived this right.  There is absolutely no requirement that a criminal defendant be specifically advised on the record in plea proceedings that he has a right to a jury trial determination particularly and separately as to each and every one of the myriad subsidiary issues in a criminal prosecution.

Walker places principal reliance in this regard upon the Supreme Court decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).  These cases provide no support for his claim, for two reasons.

First, the Supreme Court was presented in *Blakely* and *Apprendi* with sentencing rules under which a sentence could be increased based upon findings made by the sentencing

1   judge, and the high court held instead that a sentence could be enhanced, following a trial,
2   based solely upon facts found by a jury.  In Nevada, in contrast, the statutory weapon
3   enhancement was applied – following a trial – based solely upon a jury finding that a weapon
4   was used in the offense.  Following such a jury finding, the statute required that a like and
5   consecutive sentence to that imposed on the offense in question automatically be imposed
6   on the weapon enhancement.  There were no findings to be made and there was no
7   discretion to be exercised by the sentencing judge with regard to the weapon enhancement.
8   Thus, the situation presented in Walker's case was not one where at the time of his plea the
9   court and counsel would have erroneously assumed that a judge rather than a jury would
10  make the relevant factual determination on the weapon enhancement.  Instead, it was
11  established Nevada law at the time that, absent a plea, the weapon enhancement issue was
12  tried to the jury, as with any of the other myriad issues in a prosecution for robbery with the
13  use of a deadly weapon.  The *Blakely* and *Apprendi* decisions thus in truth had no impact
14  upon the weapon enhancement and sentencing procedures applicable in Walker's case.

15      Second, what the Supreme Court did hold in *Blakely* was that the statutory maximum
16  sentence that may be imposed for *Apprendi* purposes "is the maximum sentence a judge may
17  impose *solely on the basis of the facts reflected in the jury verdict or admitted by the*
18  *defendant*."  542 U.S. at 303, 124 S.Ct. at 2537 (emphasis in original).  Walker quite clearly
19  admitted the facts necessary for imposition of the weapon enhancement in his plea colloquy,
20  and those facts were specifically alleged in the charging instrument.  The imposition of the
21  weapon enhancement following the plea thus was fully in accord with *Blakely* and *Apprendi*.

22      At bottom, Walker is seeking to bootstrap the *Blakely* and *Apprendi* decisions into a
23  new rule – not stated anywhere in those opinions – that a defendant must be specifically
24  advised in connection with a plea colloquy of his right to a jury trial in particular as to a
25  statutory sentence enhancement, over and above being advised generally that he is waiving
26  his jury trial right.  This effort  is unpersuasive.  Petitioner's allegations that he was not
27  properly advised by defense counsel with regard to his waiver of his jury trial right otherwise
28  contradict the solemn declarations that he made in connection with his plea.

1    The state supreme court's rejection of this claim therefore was neither contrary to nor

2    an unreasonable application of either *Strickland* or other relevant clearly established law as

3    determined by the United States Supreme Court.

4    Ground 1 accordingly does not provide a basis for federal habeas relief.[9]

5    **Ground 2: Effective Assistance – Alleged Drug Involvement by Victims**

6    In Ground 2, petitioner alleges in principal part that he was denied effective assistance

7    of counsel when trial counsel allegedly failed "to prepare and investigate the case, i.e., of

8    victims' drug history." He alleges that "[c]ounsel was informed of the victims' involvement and

9    pass [sic] history with illegal drugs, [but] counsel failed to investigate."  #6, at 5-5B.

10    / / / /

11

12    [9]To the extent that petitioner seeks to present parallel independent substantive due process and
equal protection claims in the federal petition in Ground 1, these claims, even if *arguendo* exhausted, are

13    without merit on both AEDPA and *de novo* review, for substantially the reasons outlined regarding the
ineffective assistance claim.

14

15    In his reply, petitioner provides argument under Ground 1 as to a number of claims not presented in
Ground 1 in the federal petition, including claims of failure to take a direct appeal, failure to challenge the

16    sentences as grossly disproportionate on appeal, failure to investigate, and failure to file defense motions.
See #21, at 15-21. To the extent, if any, that these claims were included in other grounds of the federal

17    petition that remain before the Court, the claims are addressed *infra* in the discussion of those remaining
grounds. To the extent that petitioner otherwise seeks to pursue claims in the reply that were not raised in

18    the petition, the claims are disregarded. Under Rule 15 of the Federal Rules of Civil Procedure, the
procedure for presenting new claims and allegations after the respondents have answered is by seeking

19    leave to amend, not by inserting new claims for the first time in the federal reply, particularly after the
expiration of the federal one-year limitation period. Petitioner never sought leave to amend.

20

21    The belated claim in the reply regarding an alleged failure by counsel to file unspecified defense
motions in any event further is unexhausted and lacks the specificity required to state a viable federal habeas
claim under Rule 2 of the Rules Governing Section 2254 Cases.

22

23    Petitioner further seeks to include in the reply -- in a section ostensibly addressed to the standard of
review -- additional claims: (1) that the state district court abused its discretion in accepting the guilty plea

24    when the court allegedly failed to inform Walker of his right to have a jury decide the weapon enhancement;
and (2) that the state district court abused its discretion in enhancing Walker's sentence because he allegedly

25    did not admit to using a dangerous weapon. #21, at 14. These independent substantive claims were not
alleged in the federal petition in Ground 1 or otherwise. There further is some question as to whether the

26    independent substantive claims are exhausted because the Supreme Court of Nevada held that they were
not properly presented in a state post-conviction petition attacking a conviction based upon a guilty plea. #18-

27    18, Ex. W, at 6-7. In any event, the claims, on *de novo* review, are wholly without merit. Walker did in fact
admit to using a dangerous weapon as alleged in the amended information. And his argument that the state

28    district court was required to inform him that his right to a jury trial applied specifically to the statutory weapon
enhancements, or to any other subsidiary issue in the case, clearly is without merit.

As discussed in more detail under Ground 1, Walker pled guilty to three different robberies on three different dates of three different individuals in Las Vegas, including two cab drivers. The evidence regarding Walker's July 26, 2003, robbery of cab driver Lenny D'Amico and his August 16, 2003, robbery of cab driver Genene Tekle is summarized in the discussion under Ground 1. The third robbery to which Walker pled guilty was the August 8, 2003, robbery of Cesar Hernandez, a restaurant worker, on his way home from work.[10]

In his state post-conviction petition, Walker similarly alleged vaguely only that counsel was ineffective "for not investigating the victims past (drug use) when asked by me to do so." The material just quoted was the entirety of Walker's presentation in this regard. He did not allege any specifics. Nor did he tender any supporting evidentiary materials with the petition tending to establish that the allegedly requested investigation by counsel would have produced relevant and admissible evidence that had a reasonable probability of affecting the outcome in Walker's case.[11]

The Supreme Court of Nevada rejected the claim presented to that court on the following grounds:

> . . . [A]ppellant claimed that his trial counsel failed to conduct adequate investigation. The only specific line of investigation identified by appellant was trial counsel's failure to investigate the victim's alleged past drug use.
>
> Appellant failed to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant failed to indicate which of the three victims should have been investigated and how the victim's alleged past drug use had any bearing on the robbery and kidnapping charges in the instant case. In the written guilty plea agreement, appellant acknowledged that he had discussed the charges and any potential defenses with his attorney. Therefore, we conclude that the district court did not err in denying this claim.

#18-18, Ex. W, at 3-4.

_____

[10]See #18, Ex. B, at 4-41 (preliminary hearing testimony); #18-12, Ex. K, at 12 (admission of facts of crime at plea).

[11]See #18-15, Ex. S, at 7B.

The state supreme court's rejection of this vague and unsubstantiated claim was neither contrary to nor an unreasonable application of *Strickland*.  Under Nevada state post-conviction practice, a petitioner must attach affidavits, records, or other evidence supporting the factual allegations of the petition; and he may not present merely an unsubstantiated claim.  *See,e.g.,* N.R.S. 34.370(4).  Petitioner did not allege any specifics, and he did not tender any materials with the state petition supporting his vague accusation that one or more of the victims in the three different robberies had a history of "drug use."  It is doubtful that any such information regarding an alleged history of drug use by one or more of the victims – even if, *arguendo*, such information in truth would have been developed by a more extensive defense investigation – would have even been admissible at trial, much less that it would have affected the outcome of the proceedings in Walker's case.  A felon convicted on a guilty plea cannot obtain either a state or federal evidentiary hearing merely by vaguely alleging after his plea that his robbery victims had a history of drug use.  It takes more than such a vague and unsubstantiated – and likely irrelevant – allegation to effectively challenge a judgment of conviction entered on a guilty plea, particularly following the solid plea colloquy in this case.  The state high court's rejection of this claim was neither contrary to nor an unreasonable application of clearly established federal law.

Ground 2 therefore does not provide a basis for federal habeas relief.[12]

_____

[12]To the extent that petitioner seeks to present parallel independent substantive due process and equal protection claims in Ground 2, these claims, even if *arguendo* exhausted, are without merit on both AEDPA and *de novo* review, for substantially the reasons outlined regarding the ineffective assistance claim.

Petitioner further alleges in federal Ground 2 that counsel failed to obtain *Brady* materials including witness prior records, witness statements, "specific evidence which detracts from the credibility of [sic] probative value of testimony and/or statements and/or evidence used by [the] prosecution," and "prior contrary inconsistent or mistaken, or inaccurate statements, oral or written by prosecution witnesses." #6, at 5 to 5A.  Walker does not allege any specifics as to the, *e.g.*, particular witness records, statements, and inconsistent statements that defense counsel failed to obtain.  He merely lists the above generic categories along with case citations.  Although it does not appear that petitioner exhausted any such claim in the state post-conviction proceedings, the claim in any event lacks the specificity required to state a viable federal habeas claim under Rule 2 of the Rules Governing Section 2254 Cases.  Generic "laundry lists" of alleged failures by defense counsel fail to state a viable federal habeas claim, and the petitioner must allege specific facts tending to show, *e.g.*, how the alleged failure caused particular prejudice to the petitioner.  An allegation

(continued...)

-13-

***Ground 3: Effective Assistance – Mitigation Evidence***

In Ground 3, petitioner alleges in principal part that he was denied effective assistance of counsel when trial counsel allegedly failed to present mitigating evidence in support of a lesser sentence at his noncapital sentencing.   He alleges that counsel: (a) failed to investigate, prepare, or correct unspecified errors in the pre-sentence report that allegedly were identified for counsel by petitioner; (b) failed to investigate into facts surrounding petitioner's background, family history, drug dependency, and "need for treatments;" (c) failed to present representatives that petitioner had available in court who were willing to testify in his behalf, including "various community members" who had provided letters of support for petitioner and were willing to speak on his behalf; and (d) failed to provide for a psychological review of petitioner's mental capacity.[13]

The transcript of the sentencing reflects that defense counsel informed the state court, *inter alia*, that Walker had been raised in a Christian home with his father being a minister and his mother being a missionary, that both his father and mother were present at the sentencing, that Walker had got "caught up in the wrong crowd" in college and had become involved in drugs, that his drug problem was the basis for his criminal behavior, including the three robberies, and that Walker and his wife had three children who would be without their

---

[12](...continued)
only that, *e.g.*, counsel "failed to obtain witness statements" fails to set forth a sufficiently specific and viable claim.

In his reply, petitioner provides argument under Ground 2 as to a number of claims not presented in Ground 2 in the federal petition, including claims: (1) that counsel failed to investigate the alleged crimes to determine whether or not the charges filed against petitioner warranted prosecution on multiple counts; and (2) that counsel failed to investigate and present mitigating factors based upon petitioner's alleged prior mental health issues, drug addiction, and financial problems.  See #21, at 21-22.  The first such claim corresponds to federal Ground 4, which was dismissed as unexhausted.  To the extent that the second claim is encompassed within federal Ground 3, it is discussed *infra*.  To the extent that petitioner otherwise seeks to pursue claims in the reply that were not raised in the petition, the claims are disregarded.  As noted as to Ground 1, under Rule 15 of the Federal Rules of Civil Procedure, the procedure for presenting new claims and allegations after the respondents have answered is by seeking leave to amend, not by inserting new claims for the first time in the federal reply, particularly after the expiration of the federal one-year limitation period.  Petitioner never sought leave to amend.

[13]#6, at 7 to 7A.

-14-

1    parents during their incarceration.  Counsel noted the sentencing recommendation of 26 to

2    120 months on the various counts, and he argued for concurrent sentencing on all of the

3    counts.  With the mandatory consecutive sentencing on the weapon enhancements, such a

4    concurrent sentencing on the three counts would result in petitioner potentially being eligible

5    for parole outside of an institution after 52 months.[14]

6         Walker also personally addressed the court.  *Inter alia*, Walker sought to correct what

7    he believed were incorrect statements in the pre-sentence report regarding his statements

8    as to the relative responsibility for the offenses between himself and his wife.[15]

9         The state court judge acknowledged – twice – that she had reviewed the letters written

10   on Walker's behalf.  She noted petitioner's extensive criminal history and his escalation of this

11   criminal history in 2000, prior to these robberies, to a felony-level offense.  She referred to the

12   current offenses as being "drug-induced."  The judge noted, however, that Walker had made

13   poor decisions and that he had exposed two of the victims in the case to an "incredibly

14   dangerous" situation by using a weapon or simulated weapon.  She sentenced Walker to 26

15   to 120 month sentences on each of the three counts, and she ran the sentences on the two

16   counts for robbery with the use of a deadly weapon concurrently.  She imposed the remaining

17   robbery sentence, however, consecutively to the sentence for one of the two counts for

18   robbery with use of a deadly weapon, such that Walker would have to serve a minimum of 78

19   months prior to potentially being eligible for parole outside of an institution.[16]

20        On state post-conviction review, petitioner alleged only that defense counsel was

21   ineffective because he "never submitted any mitigating factors as to petitioners [sic] past

22   mental competency and drug use where as [sic] the record will show that petitioner comitted

23   [sic] his offenses to support a drug habit" and because he "failed to present any witness's [sic]

24   on defendant's behave [sic] to substantiate or testify as to his family, religion or community

25   _____

26        [14]#18-13, Ex. L, at 3-7.

27        [15]*Id.*, at 7-8.

28        [16]#18-13, Ex. L, at 4 & 8-10.

1    involvement." Petitioner did not allege any further specifics.  He did not tender any supporting

2    evidence with the state petition.  He did not allege that counsel was ineffective for failing to

3    correct alleged errors in the pre-sentence report.[17]

4           On state post-conviction review, the Supreme Court of Nevada rejected the claim of

5    ineffective assistance of counsel presented in the state courts on the following grounds:

> . . . [A]ppellant claimed that his trial counsel was ineffective
> for failing to present mitigating facts to the sentencing court.
> Specifically, appellant claimed that his trial counsel should have
> presented information about appellant's past mental competency
> and drug usage to show that the instant crimes were committed
> to support a drug habit.  Appellant further claimed that his trial
> counsel failed to present witnesses to provide testimony about
> appellant's family, religion, and community involvement.
>
> Appellant failed to demonstrate that his trial counsel was
> ineffective in this regard.  Appellant failed to identify the past
> mental health issue and how that would have affected the
> outcome of the sentencing hearing.  Appellant further failed to
> identify the witnesses, specifically describe the potential
> testimony, or provide any argument as to how this testimony
> would have made a difference in the outcome of the proceedings.
> Appellant's history of drug usage was set forth in the presentence
> investigation report.   At sentencing, appellant's trial counsel
> informed the district court about appellant's three children, the
> presence of his parents in the courtroom and appellant's religious
> background.  Appellant's trial counsel argued that the crimes
> committed were out of character and were the results of drug-
> induced episodes.   The district court acknowledged reading
> letters about appellant's family and religious background.
> Appellant failed to indicate what further information should have
> been presented such that there was a reasonable probability of
> a different sentencing outcome.  Therefore, we conclude that the
> district court did not err in denying this claim.

21   #18-18, Ex. W, at 4.

22          The state supreme court's rejection of this claim was neither contrary to nor an

23   unreasonable application of clearly established federal law as determined by the United

24   States Supreme Court.  At the outset, the vague claims presented in state court lacked

25   specific allegations and were unsubstantiated.  Petitioner presented no specific allegations

26   that, if proved, would tend to establish a reasonable probability that the outcome of the

27   _____

28          [17]#18-15, Ex. S, at 7B.

1   sentencing would have been different if defense counsel had proceeded differently.  In any

2   event, in the final analysis, there is no clearly established Supreme Court precedent

3   delineating a standard that should apply to ineffective assistance of counsel claims in

4   noncapital sentencing cases.  *E.g., Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006).

5   There accordingly is no clearly established federal law as determined by the Supreme Court

6   in this context.  *Id.*  Thus, by definition, the state courts' rejection of the claims was neither

7   contrary to nor an unreasonable application of clearly established federal law as determined

8   by the United States Supreme Court as of the time of the Nevada Supreme Court's March 28,

9   2006, decision.  Ground 3 therefore does not provide a basis for federal habeas relief.[18]

10      ***Ground 5: Effective Assistance – Alleged Failure to Prepare and Coercion of Plea***

11          In Ground 5, petitioner alleges in principal part that he was denied effective assistance

12   of counsel when trial counsel allegedly coerced him into pleading guilty because counsel

13   allegedly was unprepared to go to trial.  Petitioner alleges that "[g]iven the volume of

14   allegations charged, and type of alleged victims involved, the statements of the preliminary

15   hearing, and the inconsistencies of police reports, counsel did nothing in regards to trial

16   preparation."  He alleges that "[c]ounsel simply took advantage of the Petitioner's mental

17

18          [18]To the extent that petitioner seeks to present parallel independent substantive due process and

19   equal protection claims in Ground 3, these claims, even if *arguendo* exhausted, are without merit on both
    AEDPA and *de novo* review, for substantially the reasons outlined by the state supreme court regarding the

20   ineffective assistance claim.  Petitioner presented no allegations tending to establish any such independent
    substantive violation.

21          Petitioner's claim under federal Ground 3 that counsel was ineffective for failing to object to alleged

22   errors in the pre-sentence report does not appear to have been fairly presented to the state courts and
    exhausted.  On *de novo* review, the claim in any event does not present a sufficiently specific and viable

23   federal habeas claim under Rule 2 of the Rules Governing Section 2254 Cases.  Merely alleging that counsel
    failed to object to unspecified errors in a pre-sentence report does not present a viable claim on federal

24   habeas review.

25          Petitioner alleged for the first time in the federal reply that the pre-sentence report contained
    erroneous information because the report allegedly stated that Walker stated that his wife was the

26   mastermind of the crimes.  As discussed under Ground 1, petitioner cannot present unexhausted material
    allegations seeking to support his claims for the first time in the federal reply.  The state court record in any

27   event reflects that Walker addressed this very point with the state district court judge at sentencing.  See #18-
    13, Ex. L, at 7-8.  On *de novo* review, petitioner cannot demonstrate a constitutional violation in this regard,

28   whether based upon alleged ineffective assistance of counsel, an alleged due process violation, or otherwise.

-17-

1  status and coerced Petitioner through pleading guilty."  Finally, Walker alleges that "prior to

2  coercing Petitioner into a plea, [counsel should] have determined that the stacked allegations

3  were merely circumstantial, i.e., the ones he had coerced Petitioner into pleading guilty."[19]

4         The evidence available to the State on the charges to which Walker pled guilty is

5  referenced above in the discussion of Grounds 1 and 2.  The "stacked" and "merely

6  circumstantial" charges – i.e., the ones to which counsel allegedly coerced Walker into

7  entering a guilty plea – arose from three separate robberies on three different dates where

8  the three different victims each positively identified Walker as the individual who robbed them.

9         The express acknowledgments made by Walker in the written guilty plea agreement

10  and during the plea colloquy also are summarized above in the discussion of Ground 1.  This

11  Court rarely is presented with a more comprehensive plea canvass in a state criminal case

12  than that conducted by the state district judge in this case.

13         In his state post-conviction petition, Walker's allegations were even more vague and

14  generalized than those in the federal petition.  Petitioner alleged only that "counsel coerced

15  his own client . . . to enter a plea of guilty and enter an invalid plea," that "counsel was

16  ineffective by coercing petitioner to enter a guilty plea when counsel failed to investigate any

17  of petitioner's claims and by not objecting to any of the claims made by the State," and that

18  "his plea was not knowingly, intelligently nor voluntarily entered due to counsel's coercive and

19  persuasive methods."  Walker did not identify in the state petition how counsel allegedly

20  "coerced" him into entering a plea.  Nor did Walker make any specific allegations tending to

21  establish that counsel omitted any specific preparation step that reasonably probably would

22  have affected the outcome of the proceedings, i.e., by producing actual evidence or

23  developing a specific defense theory that, viewed objectively, would have prompted a

24  defendant in Walker's situation to not plead guilty and instead proceed to trial on all charges.

25  Nor did Walker tender any supporting evidence in any way tending to actually establish any

26  coercion, lack of preparation, or resulting prejudice.  #18-15, Ex. S, at 7A & 7C.

27

28         [19]#6, at 11 to 11A.  Ground 4 was dismissed following a holding that the ground was unexhausted.

1    On state post-conviction review, the Supreme Court of Nevada rejected the claim
2    presented in the state courts on the following grounds:

3
4    . . . [A]ppellant claimed that his trial counsel coerced him
     into entering his guilty plea because trial counsel was unprepared
     to go to trial.   Appellant further argued that this trial counsel used
5    coercive methods.   Appellant failed to demonstrate that his trial
     counsel was ineffective in this regard.   Appellant acknowledged
6    during the plea canvass that his plea was freely and voluntarily
     given.   Appellant further acknowledged in the written guilty plea
7    agreement that his plea was not the product of duress or
     coercion.   Appellant failed to demonstrate that his trial counsel
8    was unprepared to proceed to trial.   Appellant failed to provide
     any specific facts or cogent argument in support of his claim that
9    trial counsel's methods were coercive.   As discussed earlier,
     appellant benefited by entry of his plea, and appellant failed to
10   demonstrate that he would not have entered the guilty plea
     absent the alleged deficient conduct of counsel.   Therefore, we
11   conclude that the district court did not err in denying this claim.

12   #18-18, Ex. W, at 5.

13   The state supreme court's rejection of this claim was neither contrary to nor an
14   unreasonable application of clearly established federal law as determined by the United
15   States Supreme Court.

16   In the *Blackledge* decision cited above in the discussion of Ground 1, the Supreme
17   Court held that the representations made at a plea hearing and the findings made by the
18   judge in accepting the plea "constitute a formidable barrier in subsequent collateral
19   proceedings," that "[s]olemn declarations in open court carry a strong presumption of verity,"
20   and that the "subsequent presentation of conclusory allegations unsupported by specifics is
21   subject to summary dismissal."   431 U.S. at 73-74, 97 S.Ct. at 1629.   Under *Blackledge*, a
22   collateral attack that directly contradicts the responses at the plea proceedings "will entitle a
23   petitioner to an evidentiary hearing only in the most extraordinary circumstances."   *Id*.

24   *Blackledge* precludes a convicted felon from presenting just the sort of challenge to his
25   guilty plea that Walker presents here – conclusory and unsupported allegations that his
26   counsel was unprepared for trial in some unspecified fashion and that counsel therefore
27   "coerced" him in some also unspecified fashion into entering a plea.   Such conclusory
28   allegations – which directly contradict the representations that Walker made when he pled

-19-

1  guilty – clearly do not present the "most extraordinary circumstances" such as would entitle
2  a petitioner to an evidentiary hearing.[20]

3       The Nevada Supreme Court's rejection of this claim thus clearly was neither contrary
4  to nor an unreasonable application of clearly established federal law.

5       Ground 5 therefore does not provide a basis for federal habeas relief.[21]

6       **Ground 7: Effective Assistance – Alleged Failure to Advise of Appeal Right**

7       In Ground 7, petitioner alleges that he was denied effective assistance of counsel, due
8  process, and equal protection when defense counsel allegedly failed to advise him of his right
9  to file a direct appeal and allowed him to waive his right to an appeal without explaining the
10 right to him.  Petitioner further alleges that the provisions of N.R.S. 174.035 violate due
11 process because the statute allegedly allows the State to arbitrarily and capriciously deny one
12 defendant the right to an appeal while allowing others the same right.  Petitioner alleges that
13 "[t]he plea agreement simply stated that Petitioner waived his right to a direct appeal, to
14 appeal pretrial rulings, with permission of the State and the court."  Petitioner maintains that

15

16      [20]Walker asserted in the federal reply – in a general "statement of the case" – that he was "coerced"
17 into accepting a plea because the State conditioned acceptance of a plea upon both co-defendants making a
   plea deal.  He maintains that concern for his wife was the sole reason that he entered a plea. #21, at 5-6.
18 These allegations were not presented to the state courts in the corresponding claim in the state petition that
   was adjudicated by the Supreme Court of Nevada.  Nor were the allegations presented in Ground 5.  The
19 allegations further speak to coercion by the State rather than by defense counsel and further have nothing to
   do with defense counsel's level of preparation.  In all events, on *de novo* review, the alleged "coercion" of
   such an all-or-none condition by the State does not constitute unconstitutional coercion.

20
21      [21]To the extent that petitioner seeks to present parallel independent substantive due process and
   equal protection claims in Ground 5, these claims, even if *arguendo* exhausted, are without merit on both
   AEDPA and *de novo* review, for substantially the reasons outlined regarding the ineffective assistance claim.

22
23      Petitioner presents additional allegations in federal Ground 5 that were not presented to the state
   courts, such as references to, *e.g.,* "the volume of allegations charged" and "the inconsistencies of police
24 reports."  These additional allegations, however, in truth are not in substance more specific than the
   allegations made in the state courts.  For example, a generic reference only to an alleged failure to take into
25 account unspecified "inconsistencies of police reports" does not allege any facts that would tend to establish
   that there was a reasonable probability that an alleged failure by counsel affected the outcome of the
26 proceedings.  On both state and federal collateral review, the burden on petitioner is to affirmatively allege
   that counsel failed to pursue or develop specific identified information that reasonably probably would have
27 affected the outcome of the proceedings.  A vague reference only to unspecified inconsistencies in police
   reports – of unspecified nature, relevancy, and significance – fails to present a viable claim on either state or
28 federal collateral review.  Petitioner's vague references to counsel taking advantage of some unspecified
   "mental status" similarly fails to present a viable claim on habeas review, particularly under *Blackledge*.

1  the State, the state court, and defense counsel took advantage of his unspecified "mental

2  status."[22]

3      Walker's allegations regarding what was stated in the plea agreement and what

4  occurred prior to the plea are directly belied and contradicted by the plea agreement itself,

5  which stated:

6

### WAIVER OF RIGHTS

7

8      By entering my plea of guilty, I understand that I am
   waiving and forever giving up the following rights and privileges:

9                         . . . . .

10      6.  The right to appeal the conviction, with the assistance
    of an attorney, either appointed or retained, unless the appeal is
11  based upon reasonable constitutional jurisdictional or other
    grounds that challenge the legality of the proceedings and except
12  as otherwise provided in subsection 3 of NRS 174.035.

13

### VOLUNTARINESS OF PLEA

14                        . . . . .

15      All of the foregoing elements, consequences, rights, and
    waivers of rights have been thoroughly explained to me by my
16  attorney.

17                        . . . . .

18      My attorney has answered all my questions regarding this
    guilty plea agreement and its consequences to my satisfaction
19  and I am satisfied with the services provided by my attorney.

20  #18-11, Ex. J., at 3-5.

21      At the plea colloquy, Walker expressly acknowledged, *inter alia*, that he understood

22  that he was giving up the constitutional rights listed in the guilty plea agreement, that he had

23  discussed the case with his attorney prior to signing the guilty plea memorandum, and that

24  his attorney had answered all of his questions.[23]

25      / / / /

26

27      [22]#6, at 15 to 15B.  Ground 6 was dismissed following a holding that the ground was unexhausted.

28      [23]#18-12, Ex. K, at 9-11.

-21-

1    Walker's state post-conviction petition alleged in this regard only that "counsel failed

2  to tell petitioner that he had a right to file a(n) [sic] direct appeal on a guilty plea" and that

3  "counsel's failure to inform him of his right to appeal was prejudicial that caused [sic] petitioner

4  a chance to show just cause as to why his sentence was illegal at the time of sentencing."[24]

5  Walker made no other allegations regarding the right to appeal in his state petition.

6    The Supreme Court of Nevada rejected the claim presented in the state courts on the

7  following grounds:

8              . . . [A]ppellant claimed that his trial counsel failed to inform
             him of his right to a direct appeal.  Appellant failed to demonstrate
9            that his trial counsel was ineffective in this regard.  The written
             guilty plea agreement informed appellant of his limited right to
10           appeal the conviction.  Further, this court has held that "there is
             no constitutional requirement that counsel must always inform a
11           defendant who pleads guilty of the right to pursue a direct appeal"
             absent  extraordinary  circumstances.    Appellant  failed  to
12           demonstrate any such extraordinary circumstances in this case.
             Therefore,  we  conclude  that  the  district  court  did  not  err  in
13           denying this claim.

14  #18-18, Ex. W, at 6 (citation footnotes omitted).

15    The state supreme court's rejection of the claim presented in the state courts was

16  neither contrary to nor an unreasonable application of clearly established federal law as

17  determined  by  the  United  States  Supreme  Court.    Under  well-established  law,  the

18  representations made at a plea hearing and the findings made by the judge in accepting the

19  plea "constitute a formidable barrier in subsequent collateral proceedings;" "[s]olemn

20  declarations in open court carry a strong presumption of verity;" and the "subsequent

21  presentation of conclusory allegations unsupported by specifics is subject to summary

22  dismissal." *Blackledge*, 431 U.S. at 73-74, 97 S.Ct. at 1629.  A collateral attack that directly

23  contradicts the responses at the plea proceedings "will entitle a petitioner to an evidentiary

24  hearing only in the most extraordinary circumstances." *Id.*  Walker's allegation that the direct

25  appeal right that he  clearly was waiving under the plea agreement was not explained to him

26  is directly belied by his acknowledgments in the plea agreement and colloquy.  This case

27  _____

28        [24]#18-15, Ex. S, at 7-C.

does not present the "most extraordinary circumstances" such as would entitle a petitioner to an evidentiary hearing.

The Nevada Supreme Court's rejection of this claim thus clearly was neither contrary to nor an unreasonable application of clearly established federal law.

Walker's remaining claims in the federal petition in Ground 7 were not exhausted. Petitioner presented no other claim to the state courts in this regard other than the claim counsel failed to inform him that he had a right to file a direct appeal, a claim which essentially was belied by the plea agreement and plea colloquy.

The remaining claims in Ground 7 in the federal petition in any event are wholly without merit on *de novo* review.

Petitioner's due process claim is based, first, upon a misrepresentation of the record and, second, upon a completely flawed legal argument. Petitioner alleges that "[t]he plea agreement simply stated that Petitioner waived his right to a direct appeal, to appeal pretrial rulings, with permission of the State and the court." From this factual premise, he urges that the plea agreement and N.R.S. 174.035 violate due process because the State allegedly may arbitrarily and capriciously deny one defendant permission to appeal and allow others the same right.

The factual premise of course is based upon a misrepresentation of the record. The plea agreement did not state that petitioner could appeal only with the permission of the State and the court. The plea agreement instead reflected that petitioner could appeal "based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings and except as otherwise provided in subsection 3 of NRS 174.035."

Petitioner's legal argument further is fundamentally flawed. Walker's argument at bottom is based upon N.R.S. 174.035(3), which provides:

> With the consent of the court and the district attorney, a defendant may enter a conditional plea of guilty, guilty but mentally ill or nolo contendere, reserving in writing the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal must be allowed to withdraw the plea.

-23-

1   This provision has nothing to do with Walker's case.  He did not enter a conditional plea

2   reserving the right to appeal an adverse determination of a specified pretrial motion.  N.R.S.

3   174.035(3) thus has nothing to do with his case, and he therefore would not have standing

4   to raise any such due process issue with regard to the statute.  Similar to his argument under

5   *Blakely* and *Apprendi* under Ground 1, petitioner again has presented a legal argument that

6   in truth has no application to his case.

7        Petitioner similarly does not present a viable equal protection claim in this context, and

8   his conclusory and unexhausted reference to an unspecified "mental status" fails to present

9   a sufficiently specific claim under *Blackledge* and Rule 2 of the Rules Governing Section 2254

10  Cases.

11       Ground 7 therefore does not provide a basis for federal habeas relief.[25]

12  _____

13       [25]In his reply, petitioner sought to assert an entirely distinct claim that was not fairly presented in
    either the federal petition or in the state courts.  Walker asserted: "Petitioner's counsel knew that Petitioner
14  was dissatisfied with the Court proceedings and wanted to appeal but, after the Court imposed sentence,
    counsel quickly exited the courtroom and had no further communications with the Petitioner."  #21, at 18.  A
15  claim that counsel failed to consult with a defendant about an appeal when counsel allegedly knew that the
    defendant wanted to appeal is a distinct and different claim from a claim that counsel filed to inform the
16  defendant that he had a right to appeal.  Indeed the two different claims tend to be inherently inconsistent with
    one another.  In the one claim, a petitioner is alleging that he did not know that he had a right to appeal
17  because counsel did not tell him that he had such a right.  In the other claim, a petitioner necessarily is
    alleging not only that he knew that he had a right to appeal but that he conveyed a desire to counsel that he
18  file an appeal.  Petitioner did not fairly present the latter – and inconsistent – claim in the state courts, and he
    presented no such claim in Ground 7 of the federal petition.
19
         As noted as to Ground 1, under Rule 15 of the Federal Rules of Civil Procedure, the procedure for
20  presenting new claims and allegations after the respondents have answered is by seeking leave to amend,
    not by inserting new claims for the first time in the federal reply, particularly claims resting on an factual and
21  legal basis that is inherently inconsistent with the allegations of the original petition.  Petitioner never sought
    leave to amend.  The allegations therefore are disregarded.
22
         The Court additionally notes that Walker bases his claim of prejudice vis-à-vis a direct appeal on the
23  contention that he was denied the opportunity to present his arguments under *Blakely* and *Apprendi* and to
    thereby argue that the sentence imposed constituted cruel and unusual punishment in violation of the Eighth
24  Amendment.  #21, at 19.  Petitioner's *Blakely* and *Apprendi* arguments, however, are fundamentally flawed
    both legally and factually, and the arguments in truth are frivolous as applied to this case.  Petitioner therefore
25  would not be able to establish prejudice on such a basis.

26       Petitioner's reliance upon federal appellate decisions regarding the waiver of the direct appeal right in
    federal criminal cases is misplaced.  Federal criminal trials are governed by different procedural rules, and
27  such rules are not necessarily mandated by the Constitution as opposed to the Federal Rules of Criminal

28                                                                                    (continued...)

                                            -24-

Looking at the petition as a whole, a substantial portion of the petitioner's claims are premised upon factual assertions – such as his allegation that he never admitted using a weapon – that are directly belied by the state court record and legal arguments that in truth have no application to his case.  Petitioner clearly has failed to demonstrate either that his guilty plea was not knowing, intelligent, or voluntary or that his conviction pursuant to his guilty plea otherwise violates the Constitution.[26]

---

[25](...continued)
Procedure.  Moreover, with regard to the exhausted claim, petitioner must show that the Nevada Supreme Court's decision was either contrary to or an unreasonable application of clearly established federal law *as determined by the United States Supreme Court*, not federal appellate decisions.

Petitioner further provides extensive argument in the reply regarding the alleged inadequacy of the Nevada state *Lozada* remedy for the deprivation of a right to a direct appeal. #21, at 24-26.  The Supreme Court of Nevada did not order a *Lozada* remedy, however.  The state high court instead held that petitioner had not presented a viable claim that counsel was ineffective for allegedly failing to inform him of his right to take a direct appeal.

[26]In his reply, petitioner scattered a number of additional claims  that were not alleged in the federal petition across more general sections of the reply, including the statement of the case and a section on the governing standard of review.  These additional claims included claims: (1) that petitioner was denied effective assistance of counsel, due process, and rights under the Fourth Amendment when he allegedly was not promptly taken before a magistrate for a probable cause determination following his allegedly warrantless arrest and when counsel failed to file a motion to dismiss on this basis (#21, at 3); (2) that trial counsel was ineffective for failing to move for a lesser-included offense or drug treatment counseling (#21, at 14); (3) that trial counsel was ineffective for failing to object to the State's use of the pre-sentence report as proof of his criminal history (*id*.); and (4) that the state district court abused its discretion in relying on the pre-sentence report (*id*.).

As noted as to Ground 1, under Rule 15 of the Federal Rules of Civil Procedure, the procedure for presenting new claims and allegations after the respondents have answered is by seeking leave to amend, not by inserting new claims for the first time in the federal reply.  Petitioner never sought leave to amend.  The claims therefore are disregarded.

The first claim identified above further is completely unexhausted.  Any independent substantive pre-plea claim asserted therein additionally is barred under *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

The second, third, and fourth claims further lack any arguable merit.

On the second claim above, there was no realistic probability that a "motion for lesser-included offenses" and/or for drug treatment counseling would have altered the outcome of the proceedings.  Walker was charged with, and pled guilty to, serious criminal offenses.  There was not reasonably probability that a motion to "reduce the charges" and/or for drug treatment would have in any way altered the outcome of the proceedings or avoided petitioner being sentenced to the prison time that he received.

(continued...)

1    IT THEREFORE IS ORDERED that the remaining claims in the petition for a writ of

2  habeas corpus shall be DENIED on the merits and that this action shall be DISMISSED with

3  prejudice.

4    The Clerk of Court shall enter final judgment accordingly, in favor of respondents and

5  against petitioner, dismissing this action with prejudice.

6    DATED: August 31, 2009.

7

8

9                                    _____

10                                   HOWARD D. MCKIBBEN
                                     United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22  _____

23    [26](...continued)

24    On the third and fourth claims, petitioner's assumption similarly is completely flawed that there was
    some legal impropriety in the sentencing court relying upon a pre-sentence report for, *inter alia*, a statement
25  of the defendant's past criminal history.  Petitioner has not identified any specific information in the pre-
    sentence report that was incorrect as to his past criminal history.
26
    Petitioner additionally asserts that his failures to exhaust claims and to properly present viable claims
27  in the state and federal courts should be excused because he was not appointed counsel.  Petitioner has no
    right under the Sixth Amendment to appointed counsel in state or federal post-conviction proceedings.  His
28  lay status does not excuse a failure to exhaust claims and/or to present viable claims.

                                     -26-